## STATE OF LOUISIANA *vs.* THE JUDGE OF THE PARISH OF ORLEANS.

### APPLICATION FOR A MANDAMUS.

During the lifetime of both father and mother, tutorship is unknown to the law. Minor children are then subjected exclusively to the authority of the father, who administers the property of his minor children as usufructuary, and is bound to protect them in their persons and rights. The courts of justice cannot deprive the father of any part of his authority at the suggestion of creditors, under the pretext of guarding the interests of the children.

The appointment of a tutor *ad hoc* presupposes that the minor is unprovided with a tutor.

Joseph Abat, as the endorsee of a promissory note, filed his petition in the Parish Court, praying a judgment for seven hundred and twenty dollars with interest, and for the sale of a certain tract of land mortgaged to secure the payment thereof. The note was signed by L. Even, by procuration of Mrs. Widow Larche: He stated that the drawer

EASTERN DIS.
April, 1834.

STATE OF
LOUISIANA
vs.
THE
PARISH JUDGE
OF ORLEANS.

has since died, leaving for her testamentary heirs, the wife of L. Even, for one half of the estate, and the minor children of Even and his wife for the other moiety. The heirs were in possession of the mortgaged property. The note not having been paid at maturity, was protested. The action was brought against Mrs. Even and also against her husband, as the administrator of the property of the said children. The plaintiff prayed for the appointment of a curator *ad hoc* for the children.

The judge *a quo* refused to appoint a curator *ad hoc* as prayed for.

*Dennis*, for the plaintiff, applied to the Supreme Court for a *mandamus*, ordering the judge *a quo* to make the appointment as prayed for.

A rule *nisi* was granted, and the judge *a quo* showed cause on several grounds, which are stated in the opinion of the court.

BULLARD, J., delivered the opinion of the court.

This is a rule to show cause why a *mandamus* should not issue commanding the judge of the parish of Orleans to appoint a tutor *ad hoc* to the minor children of Louis Even and Angela Everhart, his wife, in order to protect the rights of said minors in a suit pending in the Parish Court, in which they are co-defendants with their father and mother.

The judge shows for cause of refusal to make an appointment:

I. That the said Angela Everhart and Louis Even are both living and present in this city and parish.

II. That no tutor can be appointed to children whose father and mother are both living, and in the same place with them.

III. That the father, during marriage, is the administrator of the estate of his minor children.

IV. That if no regular tutor can be appointrd, a tutor *ad hoc* cannot be.

This court is perfectly satisfied with the cause shown. During the lifetime of both father and mother, tutorship is unknown to the law; minor children, during that period, are subject exclusively to the paternal authority. The father administers the property of his minor children as usufructuary, and is bound to protect them in their persons and rights. The courts of justice have no power to deprive the father of any part of his authority at the suggestion of creditors, under the pretext of guarding the interests of children. The appointment of a tutor *ad hoc, i. e.* for a special purpose, presupposes that the minor is unprovided with a tutor. But it is urged, that in cases where the interests of father and child are opposed to each other, and where the father may be tempted to sacrifice those of his child, the courts ought to appoint a special tutor for his protection. The court cannot perceive the force of this reason. If the power of the tutors *ad hoc* be confined to the mere defence of a suit brought against the child, then the only effect of such appointment would be to prevent collusion between the creditors and the father, which is not easily presumed. If his authority should continue after judgment, rendered against the child, how could he provide for the payment of it without recurring to the father, who is the only legal administrator of the property of his child? And if the property should be sold to satisfy the judgment, and a balance remain in the hands of the tutor *ad hoc*, he would be accountable for it to the father. To confer such authority on a tutor *ad hoc*, would be indirectly to deprive the father of his legal right to administer the property of his minor children, and to interfere with the paternal power, in a manner not recognised by law.

It is, therefore, ordered, adjudged and decreed, that the rule be discharged.

During the lifetime of both father and mother, tutorship is unknown to the law. Minor children are then subjected exclusively to the authority of the father, who administers the property of his minor children as usufructuary, and is bound to protect them in their persons and rights. The courts of justice cannot deprive the father of any part of his authority at the suggestion of creditors, under the pretext of guarding the interests of the children.

The appointment of a tutor *ad hoc*, presupposes that the minor is unprovided with a tutor.